UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEAH KOZAK,

       Plaintiff,

  v.

                                      **DECISION AND ORDER**
                                            20-CV-184S

CSX TRANSPORTATION, INC.,

       Defendant.

# I.  INTRODUCTION

In this action, Plaintiff Leah Kozak, a transgender woman, alleges that Defendant CSX Transportation, Inc., unlawfully discriminated against her on the basis of sex and disability when it terminated her employment after she urinated in a rail yard, a practice she alleges non-transgender employees are not disciplined for. Before this Court are Kozak's motion to strike a section of CSX's motion for summary judgment—or, in the alternative, to amend her complaint to add a constitutional claim—and CSX's motion to strike certain documents Kozak filed in opposition to its motion for summary judgment. (Docket Nos. 56, 73.) Because this Court finds that none of the relief requested is warranted, it will deny both motions.

# II.  BACKGROUND

Kozak was employed by CSX from September 1999 until her termination in July 2019. (Complaint, Docket No. 1, ¶ 37.)[1] In late 2018, she came out as transgender and

---

[1] These and the following facts are taken from the complaint to provide context for the instant motions. This

began to transition to female, informing a CSX supervisor of her transition in early 2019. (Id., ¶ 42.) She began taking hormone-suppressing medication to treat her gender dysphoria[2] and began to present with more feminine characteristics and body styling. (Id., ¶¶ 43-45.) The medication she was taking, spironolactone, caused frequent urination. (Id., 45.)

On June 13, 2019, while Kozak was working in the Buffalo rail yard, she urgently needed to urinate. (Id., ¶¶ 48, 51.) During a pause in the rail activity, she walked to a nearby shanty and urinated against it, taking care not to expose herself. (Id., ¶¶ 52-54.)

Trainmaster Amanda Dellinger was observing Kozak via security cameras at this time. (Id., ¶ 55.) When Kozak walked away from her post, Dellinger followed her with a camera and observed her urinating. (Id.) Dellinger then pulled Kozak off duty and began disciplinary proceedings that ultimately resulted in Kozak's termination from employment. (Id., ¶¶ 56-73.)

---

Court gives them no presumption of truthfulness at this stage.

[2] The most recent *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5-TR)*, defines gender dysphoria as "a marked incongruence between one's experienced/expressed gender and their assigned gender, lasting at least 6 months, as manifested by at least two of the following:

- A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics)
- A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics)
- A strong desire for the primary and/or secondary sex characteristics of the other gender
- A strong desire to be of the other gender (or some alternative gender different from one's assigned gender)
- A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender)
- A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender)

In order to meet criteria for the diagnosis, the condition must also be associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5-TR)*. American Psychiatric Association. 2022, https://www.psychiatry.org/patients-families/gender-dysphoria/what-is-gender-dysphoria (accessed 4/6/2023 at 12:13 p.m.)

Kozak alleges that Dellinger bore an anti-transgender bias and targeted Kozak on this basis. (Id., ¶ 56.)  Kozak alleges that other employees routinely urinated in the rail yard and behind the shanty but were not disciplined. (Id., ¶¶ 68-69.) Kozak alleges that she was disciplined, and ultimately terminated, because of Dellinger's anti-transgender bias, in violation of Title VII.

Because medication for her gender dysphoria caused Kozak to urinate more frequently, she also claims that CSX's failure to provide a nearby restroom constitutes a failure to accommodate her disability, and its termination of her employment constitutes disability-based discrimination, both in violation of the Americans with Disabilities Act.

Kozak filed her complaint on February 10, 2020. (Docket No. 1.) On November 18, 2022, CSX moved for summary judgment on all of Kozak's claims. (Docket No. 50.) This Court has that motion under advisement. Here, it resolves two motions to strike that were filed in relation to CSX's motion for summary judgment.

## III.  DISCUSSION

On December 16, 2022, Kozak filed a motion to strike portions of CSX's brief in support of its motion for summary judgment. (Docket No. 56.) One of CSX's summary judgment arguments is that Kozak is not covered by the ADA because the ADA specifically excludes certain "gender identity disorders" from its coverage. (Docket No. 50-12 at pp. 16-17 (citing 28 U.S.C. § 12211 (b)).) Kozak moves to strike that argument from CSX's motion, arguing that CSX failed to raise this argument in its answer and had therefore waived this defense. In the alternative, Kozak seeks leave to amend her complaint to add a claim for a declaratory judgment that the ADA's exclusion of "gender

3

identity disorders" violates the Constitution.[3]  CSX argues that it raised this defense in its answer and that it would be prejudiced by late amendment of the complaint.

Also before this Court is CSX's motion to strike several documents that Kozak filed late and without leave of this Court in response to CSX's motion for summary judgment. (Docket No. 73.) CSX argues that these documents are both untimely and inadmissible. Kozak seeks leave of this Court to excuse her late filing and argues for the documents' admissibility.

## A.     Kozak's motion to strike.

Kozak asks this Court to strike CSX's argument that she is not covered by the ADA because the ADA specifically excludes from coverage those with "gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." (Docket No. 56-4 at p. 8 (citing 28 U.S.C. § 12211 (b)).) She argues that CSX waived this argument by failing to include it in its answer and that she would be prejudiced by having to address this "surprise" argument now.

### 1.  Legal Standard

Federal Rule of Civil Procedure 12 (f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12 (f). "[M]otions to strike under Rule 12 (f) are generally disfavored and

---

[3] Kozak makes three arguments against the applicability of this section of the ADA to her case.  Only the first of these would necessitate an amended complaint. First, she argues that, because the legislative history behind this section demonstrates an animus against transgender people, the statute's specific exclusion of transgender individuals violates the Equal Protection and Due Process clauses of the Fifth Amendment to the Constitution. Second, she argues that "gender identity disorders," as contained in the statute, refers to a diagnosis that is no longer in existence, having been replaced by the DSM-V's "gender dysphoria." Because the text does not explicitly exclude Kozak's gender dysphoria diagnosis, she argues that the exclusion does not apply to her. Finally, she argues that her gender dysphoria results from a physical impairment such that the exclusion does not apply to her. Only the first of these reaches constitutional issues and underlies her motion to amend. This Court will address Kozak's other arguments when it resolves CSX's motion for summary judgment.

granted only if there is strong reason to do so." <u>Kochan v. Kowalski</u>, 478 F. Supp. 3d 440, 450–51 (W.D.N.Y. 2020) (citing <u>Holland v. Chase Bank USA, N.A.</u>, 475 F. Supp. 3d 272, 275 (S.D.N.Y. 2020) (quotation omitted)). While Rule 12 (f) does not explicitly authorize a motion to strike documents other than pleadings, courts routinely entertain such motions pursuant to their "inherent authority to strike any filed paper which [they] determine[] to be abusive or otherwise improper under the circumstances." <u>Sierra v. United States</u>, No. 97 Civ. 9329, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 9, 1998).

**2. Striking part of CSX's motion is not warranted.**

As an initial matter, this Court observes that none of the documents Kozak seeks to strike is a pleading. This Court must therefore determine whether CSX's argument regarding the statutory exclusion is so improper, or so prejudicial to Kozak, as to warrant being stricken.

Kozak argues that striking is warranted for two reasons: (1) CSX failed to raise the affirmative defense of "statutory bar" in its answer, precluding it from raising this argument in its motion for summary judgment; and (2) she is prejudiced by CSX's "surprise" argument at this late date. Neither argument is convincing.

First, this Court finds that CSX raised the challenged argument in its answer. In its answer, CSX asserts as a defense that "Plaintiff's claims are barred to the extent that she is not a member of a protected class." (Docket No. 10 at p. 15.) While the specific formulation that a plaintiff is not a member of a "protected class" is perhaps more often found in the Title VII context, it is a foreseeable defense to a statute guaranteeing protection only to certain defined individuals. It is not unheard of as a defense to an ADA claim. <u>See, e.g.</u>, <u>Person v. Mulligan Sec. Corp.</u>, No. 22CV02980AMDLB, 2023 WL

2652281, at *5 (E.D.N.Y. Mar. 27, 2023) ("As an initial matter, this claim fails because, as discussed above, the plaintiff is not a member of a protected class as defined by the ADA.").

CSX also alleges in its answer that Plaintiff fails to state a claim. (Id. at p. 13.) To state a claim for discrimination based on disability, a plaintiff must demonstrate that (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability *within the meaning of the ADA*; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability. Kinneary v. City of New York, 601 F.3d 151, 156 (2d Cir. 2010) (italics added) (quoting Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005)).

These two affirmative defenses sufficed to put Kozak on notice that CSX would likely argue that neither Title VII nor the ADA covered her. Kozak's argument that she would be prejudiced by having to defend against this "surprise" defense now is therefore not convincing. Because this defense was adequately raised in the answer, it is not improper for CSX to base one of its arguments for summary judgment on it. Kozak's motion to strike will therefore be denied.

## B.    Kozak's Motion to Amend

If this Court permits CSX's defense regarding the ADA's statutory exclusion to remain, Kozak asks for leave to amend her complaint to add a constitutional claim. She observes, correctly, that a constitutional claim cannot be raised in response papers, and therefore she seeks leave to amend her complaint to add a request for a declaratory judgment that Section 12111's specific exclusion of "gender identity disorders not

resulting from a physical impairment" violates the Fifth Amendment's guarantees of equal protection and due process.  (Docket No. 56-4 at p. 14.)

### 1.  Legal Standard

Rule 15 (a) provides that where a party seeks to amend a pleading before trial, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). This permissive standard is consistent with courts' "strong preference for resolving disputes on the merits." Williams v. Citigroup Inc., 659 F.3d 208, 212–13 (2d Cir. 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)).

However, "[w]here a scheduling order has been entered, the lenient standard under Rule 15 (a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16 (b) that the Court's scheduling order shall not be modified except upon a showing of good cause." Laskowski v. Liberty Mut. Fire Ins. Co., No. 5:11–cv–340, 2013 WL 5127039, at *2 n. 3 (N.D.N.Y. Sept. 12, 2013) (quoting Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003)). "To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" Id. at *2 (internal quotation marks and citation omitted). Further, "the good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." Enzymotec Ltd. v. NBTY, Inc., 754 F.Supp.2d 527, 536 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

A court may also consider whether allowing the amendment would prejudice the opposing party. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007). One of the most important considerations in determining whether amendment

would be prejudicial is the degree to which it would delay the final disposition of the action. Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998). A proposed amendment is especially prejudicial when discovery has been completed and the non-movant has already filed a motion for summary judgment. Id. (citing Ansam Assocs. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)).

**2.  Kozak has not shown good cause to permit amendment.**

On July 16, 2020, the Honorable Leslie G. Foschio, United States Magistrate Judge, issued a scheduling order that, as is relevant here, made motions to amend the complaint due by August 13, 2020. (Docket No. 17.) Kozak did not move to amend her complaint until December 16, 2022, more than two years after the original deadline. In support of her motion, Kozak argues, as discussed above, that she was taken by surprise by CSX's reliance on Section 12211's exclusion of "gender identity disorders," and argues that her proposed amendment would not prejudice defendants.

As is discussed above, this Court finds unconvincing Kozak's argument that CSX's reliance on the text of the statute took her by surprise. It observes here that, in addition to the two affirmative defenses CSX raised, other factors point toward Kozak having an awareness that the statutory exclusion would be relevant to her claims. First, the complaint alleges that her gender dysphoria is caused by physical impairments—that is, she appears to be claiming that the ADA's exclusion of "gender identity disorders not caused by physical impairments" does not apply to her. (See Docket No. 1, ¶¶ 33-34.) This demonstrates, at the very least, Kozak's familiarity with the statutory exclusion.

Further, this Court observes that the ADA statutory exclusion defense is often raised in litigation involving transgender plaintiffs. In fact, the question whether the term

8

"gender identity disorders" used in the statute encompasses the newer diagnosis of gender dysphoria was actively being litigated in other courts at the time Plaintiff filed her complaint. One case Plaintiff cites in her response to CSX's motion for summary judgment was decided before she filed her complaint, and discusses this very issue. See Doe v. Massachusetts Dep't of Corr., No. CV 17-12255, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018) (denying motion to dismiss where defendant raised the statutory exclusion as a defense; see also London v. Evans, No. CV 19-559, 2019 WL 5726983, at *6 n.3 (D. Del. Nov. 5, 2019) ("[a]mong the courts who have discussed the issue, there is significant disagreement whether gender dysphoria falls into the ADA's categorical exclusions"); Blatt v. Cabela's Retail, Inc., No. 5:14-CV-04822, 2017 WL 2178123, at *4 (E.D. Pa. May 18, 2017) (discussing the statutory exclusion issue).

The presence of this issue in prominent transgender ADA cases, including a case Kozak herself cites, combined with CSX's affirmative defenses discussed above, sufficed to put Plaintiff's counsel on notice that the statutory exclusion would be raised as a defense to her ADA claim. Amendment can be permitted when new facts come to light, but here, the contested nature of the ADA's statutory exclusion was, or should have been, apparent from the time the complaint was drafted.

Further, this Court finds that the filing of an amended complaint would delay the resolution of this matter, which would deny both parties a timely resolution. This Court finds this factor particularly convincing because Kozak sought to amend her complaint after CSX filed its motion for summary judgment. Krumme, 143 F.3d at 88.

For all these reasons, this Court finds that Kozak has failed to demonstrate good cause for her proposed amendment at this late stage. Her motion for leave to amend the

complaint will therefore be denied.

In conjunction with her motion to amend, Kozak also asks this Court, should it find that she has not presented facts sufficient to establish that her gender dysphoria results from a physical impairment, to permit her to conduct further discovery on this question. (Docket No. 65 at p. 19.) Judge Foschio's last scheduling order to reference discovery set discovery to be completed by February 14, 2022, and motions to compel discovery by March 15, 2022. (Docket No. 41.)

A party seeking to reopen a closed discovery period must demonstrate "good cause" for reopening. See Fed. R. Civ. P. 16 (b)(4) (providing that "[a] schedule may be modified only for good cause and with the judge's consent"); In Re Terrorist Attacks on Sept. 11, 2001, 03 MDL 1570 (GBD)(SN), 2023 WL 1797629, at *4 (S.D.N.Y. Feb. 7, 2023) ("The legal standard for allowing additional document discovery is 'good cause'."). Six factors guide the good-cause inquiry: (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party acted diligently; (5) whether the need for additional discovery was foreseeable in light of the time originally permitted for discovery; and (6) whether the discovery is likely to lead to relevant evidence. See Moore v. Peters, 341 F.R.D. 463, 472 (W.D.N.Y. 2022); Moroughan v. Cnty. of Suffolk, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018) (citing cases).

Although trial has not been scheduled in this matter, CSX opposes the motion, and would be prejudiced by delays caused by a reopening of discovery. Further, this Court finds that the need for discovery on this question was clear from the filing of the complaint, in which Kozak alleged that "based on many scientific studies during the past two

decades, gender dysphoria has been identified as resulting from a physiological condition of the brain and neurological system" and "transgender persons have structures that are typical of non-transgender people with the same gender identity." (Docket No. 1, ¶¶ 33-34.) These allegations themselves made foreseeable the need for thorough discovery as to the physiological causes of Kozak's gender dysphoria. As discussed above, this Court further finds Kozak's claim of surprise unconvincing. Kozak's request to reopen discovery is therefore denied for lack of good cause.

**C.    CSX's motion to strike**

After Kozak filed her opposition to CSX's motion for summary judgment, CSX moved to strike certain of her documents as untimely. (Docket No. 73.) CSX argues that Kozak's late filing prejudices it, and that a number of Kozak's exhibits contain inadmissible material. Kozak asks this Court to permit her late filing and argues for the admissibility of her exhibits under the Federal Rules of Evidence.

**1.  Untimeliness**

The essence of CSX's untimeliness argument is that Kozak's disregard of this Court's filing deadlines warrants striking of all her late-filed exhibits.

Courts have the "inherent authority to strike any filed paper which [they] determine[] to be abusive or otherwise improper under the circumstances." Sierra,1998 WL 599715, at *9. At the same time, courts possess "broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (citing Wight v. Bankamerica Corp., 219 F.3d 79, 85 (2d Cir. 2000)). Courts generally consider the extent to which the late filing of documents would prejudice the opposing party. See, e.g., Nat'l Coal. on Black Civic

11

Participation v. Wohl, No. 20 CIV. 8668 (VM), 2023 WL 2403012, at *14 (S.D.N.Y. Mar. 8, 2023).

Here, Kozak filed the exhibits in question on January 22, 2023, five days after the amended deadline of January 17, and three days after this Court deemed other documents timely filed. (Docket Nos. 70-71.) On January 23, 2023, Kozak filed an amended response to Defendant's statement of material facts that contained substantive changes to the original statement this Court had deemed timely filed on January 19, 2023. (Docket No. 72.) Kozak acknowledges the lateness of her filings and her failure to obtain either CSX's consent or this Court's leave to file out of time. (Docket No. 78.) She asserts, however, that she experienced numerous technical difficulties when filing her exhibits and filed a draft version of her statement of material facts in error.

Despite CSX's claims of prejudice, it does not point to any actual prejudice it suffered from Kozak's late filing. Nor does this Court find that the late filings prejudiced CSX:  this Court granted CSX sufficient time to reply and the ability to use extra pages in their reply. Though this Court recognizes that Kozak may have imposed some hardship on CSX by missing this Court's deadline, the Court is not persuaded that her untimely submission so prejudiced CSX that striking all of Kozak's untimely submissions in their entirety is warranted. This Court therefore declines to strike Kozak's submissions on the basis of their untimeliness.

### 2. Inadmissibility

CSX also asks this Court to strike certain exhibits due to their inadmissibility under the Federal Rules of Evidence.

A court resolving a motion for summary judgment considers only admissible

evidence.  See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); Fed. R. Civ. P. 56 (c)(1)(B) (requiring that facts be supported by admissible evidence); Fed. R. Civ. P. 56 (c)(2) (permitting objections to inadmissible facts asserted at summary judgment stage). As such, evidence and statements that would be inadmissible at trial, such as inadmissible hearsay, cannot be used to support or oppose summary judgment. See Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial"); see also Raskin, 125 F.3d at 66 ("Because the purpose of summary judgment is to weed out cases in which there is no genuine issue as to any material fact . . . it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment.") (internal quotations and citations omitted).

CSX seeks to strike as inadmissible certain exhibits that Kozak filed in opposition to CSX's motion for summary judgment, namely: a July 27, 2020, medical record from one of Kozak's treatment providers (Docket No. 70-3); the affidavit of Randi Ettner, Ph.D., filed in litigation in the District of Massachusetts, discussing the nature of gender dysphoria and the challenges faced by a transgender female inmate housed in a male facility (Docket No. 70-4); a 2013 memorandum of law by CSX in support of summary judgment from a case in the Eastern District of Tennessee (Docket No. 70-14); an excerpt of a 2011 preliminary report from CSX's Baltimore division regarding an accident on a bridge over the Susquehanna River (Docket No. 70-15); a plaintiff's statement of undisputed facts in the Susquehanna bridge case filed in litigation in the Eastern District

of Pennsylvania (Docket No. 70-16); an excerpt of a 2009 appellate brief filed by CSX before the Ohio court of appeals (Docket No. 70-17); and a description of spironolactone from the Mayo Clinic's website. (Docket No. 70-18).

CSX argues that these documents are not authenticated and are irrelevant. (Docket No. 73-1.) Kozak does not contest CSX's motion to strike the Ettner Affidavit. (See Docket No. 78 at p. 9.) This Court will therefore grant that portion of CSX's motion as unopposed and strike the Ettner Affidavit. (Docket No. 70-4.) As to the other documents, Kozak asserts that they are authenticated by her attorney's affidavit and constitute relevant evidence of CSX's tolerance of public urination by non-transgender employees.

Having reviewed the parties' motions, this Court agrees with CSX that several of Kozak's submissions may well be inadmissible based on their lack of direct relevance to the issues in the current case. In particular, this Court is hard pressed to find the relevance of partisan briefing or a preliminary report from ten or more years ago that incidentally mentions the possibility of employee urination at locations other than CSX's Buffalo yard. But rather than strike these submissions in whole, this Court will independently assess their admissibility and consider only admissible evidence in resolving CSX's motion for summary judgment. See Ramirez v. Michael Cetta Inc., 19-CV-986 (VEC), 2020 WL 5819551, at *4 (S.D.N.Y. Sept. 30, 2020) (limiting analysis to "those portions of the record that would be admissible at trial"); Grandy v. Manhattan & Bronx Surface Transit Operating Auth., No. 16-CV-6278, 2018 WL 4625768, at *4 (S.D.N.Y. Sept. 26, 2018) ("Where Plaintiff's declaration proffers facts that would not be admissible in evidence, the Court has not considered them.").

14

Accordingly, insofar as CSX seeks to strike certain exhibits Kozak filed with her summary judgment response papers, that motion will be denied except as to the Ettner Affidavit.


## IV.  CONCLUSION

Because this Court declines to strike portions of CSX's motion for summary judgment or to grant Kozak leave to file an amended complaint, Kozak's motion seeking that relief will be denied. Because this Court also declines to strike the exhibits Kozak has submitted in opposition to CSX's motion for summary judgment, except the Ettner Affidavit, it will deny CSX's motion in part and grant it in part.


## V.  ORDERS

IT HEREBY IS ORDERED, that Kozak's Motion to Strike/Motion to Amend (Docket No. 56) is DENIED.

FURTHER, that CSX's Motion to Strike (Docket No. 73) is DENIED IN PART and GRANTED IN PART. It is DENIED as to all exhibits except the Ettner Affidavit. It is GRANTED as to the Ettner Affidavit (Docket No. 70-4), which is STRICKEN.

FURTHER, that, because this Court has resolved the instant motions on the papers, the status conference set for April 19, 2023, at 9:30 a.m. is CANCELED.

FURTHER, that CSX's Motion for Summary Judgment (Docket No. 50) remains under advisement.

SO ORDERED.

Dated:          April 14, 2023
                Buffalo, New York

                                        <u>s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        United States District Judge